# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

RICHARD TYNER,
                    Appellant,

            v.

DEPARTMENT OF AGRICULTURE,
                    Agency.

DOCKET NUMBER
DC-0752-16-0098-I-1

DATE: September 7, 2016

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

David A. Branch, Esquire, Washington, D.C., for the appellant.

Martin A. Gold, Esquire, Washington, D.C., for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which sustained his 30‑day suspension.  Generally, we grant petitions such as this one only when:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the initial decision to: (1) to amend and supplement the administrative judge's analysis regarding the charge of misrepresentation or concealment of facts on official documents; (2) find that the agency proved a nexus between the sustained charge and the efficiency of the service; and (3) incorporate the standards set out in the Board's decision in *Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015), and supplement the administrative judge's analysis regarding the appellant's affirmative defense of discrimination based on race. Except as expressly modified by this Final Order, we AFFIRM the initial decision.

## BACKGROUND

¶2     The appellant is employed as a Materials Handler with the agency's Office of Operations Management Services in Beltsville, Maryland. Initial Appeal File (IAF), Tab 1 at 1, Tab 5 at 28, 31; Hearing Transcript (HT) at 5 (testimony of the appellant). On October 3, 2014, the agency proposed the appellant's removal based on three charges: (1) fighting, attempting to inflict bodily harm on duty; (2) creating a disturbance or disruption in the workplace; and (3) misrepresentation or concealment of facts on official documents. IAF, Tab 5 at 39‑43.

¶3     The charges of fighting, attempting to inflict bodily harm on duty, and creating a disturbance or disruption in the workplace arose from a verbal and

physical altercation between the appellant and a contractor, J.L., at the agency's Beltsville Service Center Warehouse on August 18, 2014. *Id*. at 39‑40; HT at 8 (testimony of the appellant). The agency alleged that, after J.L. refused to perform a work assignment and made racial comments to the appellant, the appellant and J.L. engaged in a verbal altercation and pushed one another, and the appellant struck J.L. in the face. IAF, Tab 5 at 39‑40. Subsequently, the appellant went outside to smoke a cigarette, and J.L. followed him and struck the appellant on the side of the head with the claw end of a hammer, causing the appellant to bleed on the warehouse steps. *Id*. at 40; HT at 13‑14, 32‑33, 35 (testimony of the appellant).

¶4    The charge of misrepresentation or concealment of facts on official documents arose from a Safety/Environment Incident Report (the incident report) that the appellant prepared and submitted on August 20, 2014, two days after the altercation with J.L. IAF, Tab 5 at 40, 69. In this incident report, the appellant inaccurately reported that he incurred his August 18, 2014 head injury when he was accidentally hit on the side of the head with the end of a forklift while dumping furniture into a compactor. *Id*. at 69.

¶5    After the appellant, through his union, presented an oral response to the notice of proposed removal, IAF, Tab 10 at 5‑6, the deciding official sustained all of the charges, but mitigated the penalty to a 30‑day suspension, IAF, Tab 16 at 5‑8.

¶6    The appellant filed a formal equal employment opportunity (EEO) complaint regarding his suspension, among other things. IAF, Tab 1 at 7. After the agency issued a final agency decision finding no discrimination, *id*. at 7‑31, the appellant filed a Board appeal challenging his suspension, *id.* at 4, and raised affirmative defenses of discrimination based on race (Caucasian) and national origin (Italian), IAF, Tab 12, Tab 17 at 4.

¶7  After holding the appellant's requested hearing, IAF, Tab 1 at 2, the administrative judge found that the agency failed to prove the charges of fighting, attempting to inflict bodily harm on duty, and creating a disturbance or disruption in the workplace.[2]  IAF, Tab 23, Initial Decision (ID) at 3‑10.  She found the appellant's testimony that he did not strike or push J.L. to be more credible than the testimony of two contractors, M.W. and R.P., who testified that the appellant did so.  ID at 6‑10; IAF, Tab 10 at 5; HT at 10, 15 (testimony of the appellant), 73‑74, 77 (testimony of R.P.), 83‑84, 87‑89 (testimony of M.W.).  Therefore, the administrative judge concluded that any fighting or attempting to inflict bodily harm on duty or creating a disturbance or disruption in the workplace was most likely the result of J.L.'s conduct, rather than the appellant's.  ID at 10.

¶8  The administrative judge found that the agency proved the charge of misrepresentation or concealment of facts on official documents.  ID at 10‑13.  She found that the appellant misrepresented the cause of his injury on the incident report and concealed that J.L. had assaulted him with a hammer.  ID at 12.  The administrative judge further found that the appellant failed to prove his affirmative defenses of discrimination based on race and national origin.  ID at 14−16.  Finally, she found that the penalty of a 30‑day suspension was within the bounds of reasonableness for the sole sustained charge.  ID at 17‑19.

¶9  The appellant has filed a petition for review of the initial decision.  Petition for Review (PFR) File, Tab 1.  The agency has responded in opposition to the petition for review.  PFR File, Tab 3.

---

[2] The agency does not challenge the administrative judge's findings that it failed to prove these charges on review, and we discern no reason to disturb these findings. Petition for Review File, Tab 3 at 4, 11; ID at 3‑10.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The charge of misrepresentation or concealment of facts on official documents should be divided into two separate charges.</u>

¶10      On review, the appellant contests the administrative judge's finding that the agency proved the charge of misrepresentation or concealment of facts on official documents. PFR File, Tab 1 at 5‑6. For reasons not raised by either party on review, we find that the administrative judge erred in analyzing this charge, which she construed as a single charge of misrepresentation or falsification. *See* ID at 12.

¶11      In determining how charges are to be construed, the Board will examine the structure and language of the proposal notice. *Tom v. Department of the Interior*, 97 M.S.P.R. 395, ¶ 17 (2004). In this regard, an adverse action charge usually consists of two parts: (1) a name or label that generally characterizes the misconduct; and (2) a narrative description of the actions that constitute the misconduct. *Walker v. Department of the Army*, 102 M.S.P.R. 474, ¶ 7 (2006). The Board may not split a single charge into several independent charges and then sustain one of the newly formulated charges, which represents only a portion of the original. *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990). However, the prohibition against charge-splitting depends on whether the charge is based on a single act or on more than one act. *Walker*, 102 M.S.P.R. 474, ¶ 7. A charge that is based on more than one act can be divided into multiple specifications or charges, each corresponding to the separate acts alleged. *Id*.

¶12      Here, the agency labeled the charge as "[m]isrepresentation or [c]oncealment" of facts on official documents and, in the narrative description of the charge, alleged that the appellant: (1) misrepresented the facts when he asserted that his injury was caused by being hit on the head with a forklift; and (2) concealed the fact that he had been in a fight with J.L. and had been hit on the head with a hammer. IAF, Tab 5 at 40. Thus, we find that the agency charged

the appellant with having committed two separate acts of misconduct (misrepresenting facts and concealing facts on the incident report) that are not dependent on each other, have different elements of proof, and do not comprise a single inseparable act. *See, e.g.*, *Boo v. Department of Homeland Security*, 122 M.S.P.R. 100, ¶¶ 12‑14 (2014) (distinguishing the elements of proof for a charge of falsification or misrepresentation from those of a charge of lack of candor). Accordingly, we modify the initial decision to find that, rather than a single charge of misrepresentation or falsification, the agency's charge of "Misrepresentation or Concealment of Facts on Official Documents" consists of two separate charges, one of which alleges that the appellant misrepresented facts on an official document, and the other of which alleges that he concealed facts on an official document. *Walker*, 102 M.S.P.R. 474, ¶ 7 (finding that an agency's charge constituted two separate charges when it contained two separate acts of misconduct that were not dependent on each other and that had different elements); *see Texeira v. U.S. Postal Service*, 267 F. App'x 950, 951‑52 (Fed. Cir. 2008) (finding that the Board properly split a charge of "Unacceptable Conduct: Falsification in Recording Time/Failure to Follow Proper Timekeeping Procedures" into two separate charges because these labels were separate offenses with different elements of proof).[3] We will address each charge individually.

<u>The administrative judge erred in finding that the agency proved a charge of misrepresentation.</u>

¶13    The Board has found that charges of misrepresentation and falsification require the same elements of proof. *Boo*, 122 M.S.P.R. 100, ¶ 10 (citing *Guerrero v. Department of Veterans Affairs*, 105 M.S.P.R. 617, ¶ 9 (2007)). To establish a charge of falsification or misrepresentation, the agency must prove by preponderant evidence that the appellant knowingly supplied incorrect

---

[3] Although *Texeira* is an unpublished decision, the Board may rely on unpublished Federal Circuit decisions when, as here, it finds the court's reasoning persuasive. *Mauldin v. U.S. Postal Service*, 115 M.S.P.R. 513, ¶ 12 (2011).

information and that he did so with the intention of defrauding the agency. *O'Lague v. Department of Veterans Affairs*, 123 M.S.P.R. 340, ¶ 6 (2016); *Boo*, 122 M.S.P.R. 100, ¶ 10. The intent element requires two distinct showings: (1) that the appellant intended to deceive or mislead the agency; and (2) that he intended to defraud the agency for his own private material gain. *Leatherbury v. Department of the Army*, 524 F.3d 1293, 1300 (Fed. Cir. 2008); *O'Lague*, 123 M.S.P.R. 340, ¶ 6; *Boo*, 122 M.S.P.R. 100, ¶¶ 11–12.

¶14        Here, although the administrative judge analyzed the charge as a charge of misrepresentation or falsification, she failed to address the second component of the intent element, which requires the agency to prove that the appellant intended to defraud the agency for his own private material gain. ID at 12; *see Boo*, 122 M.S.P.R. 100, ¶ 12 (finding that to establish a charge of falsification, misrepresentation, or lying, an agency must prove that an employee intended to defraud the agency for his own private material gain). We find that the agency failed to prove this element of a misrepresentation charge.

¶15        While the definition of "private material gain" is quite broad and is not limited to monetary gains, *see Boo*, 122 M.S.P.R. 100, ¶ 13, here, the agency did not present evidence regarding any form of private material gain that the appellant hoped to achieve in submitting the inaccurate incident report. *Cf. Ahles v. Department of Justice*, 768 F.2d 327, 330 (Fed. Cir. 1985) (finding that an agency proved intent to defraud where an appellant testified that he submitted false information to influence a pending disciplinary proceeding against him). The appellant asserted that he provided the incorrect information on the incident report because he knew that J.L. was on parole and he did not want to cause J.L. to be sent back to prison. IAF, Tab 10 at 5, Tab 12 at 6, Tab 17 at 3; HT at 39 (testimony of the appellant); *see* PFR File, Tab 1 at 6. Although it is not clear why the appellant would want to protect J.L. from returning to prison after J.L. attacked him with a hammer, the agency did not challenge the appellant's testimony to this effect on cross‑examination at the

hearing, or present evidence regarding any other reason that the appellant misrepresented facts in the incident report.[4] Regardless of whether the appellant's explanation for his actions was ultimately credible, the burden of proof of the charge lies with the agency, and the agency did not present any evidence to prove the element of private material gain. *See* 5 U.S.C. § 7701(c)(1)(B); 5 C.F.R. § 1201.56(b)(1)(ii).

¶16    For this reason, we find that the agency failed to prove the charge of misrepresentation. *See Parker v. Department of Veterans Affairs*, 122 M.S.P.R. 353, ¶ 15 (2015) (finding that an agency failed to prove a specification of filing false charges when it did not demonstrate that an appellant made a false representation with the intent to defraud, deceive, or mislead the agency for her own personal material gain); *Boo*, 122 M.S.P.R. 100, ¶ 15 (finding that a charge of falsification could not be sustained when the record lacked any evidence that an appellant intended to defraud, deceive, or mislead the agency for his own private material gain, but instead indicated that he may have acted to assist another individual). Accordingly, we modify the initial decision to find that the agency did not prove a misrepresentation charge.

The agency proved the charge of concealment of facts on official documents.

¶17    We find that the agency proved the charge of concealment of facts on official documents, which we construe as a lack of candor charge. While falsification involves an affirmative misrepresentation, and requires intent to deceive, lack of candor, by contrast, is a broader and more flexible concept whose contours and elements depend on the particular context and conduct involved. *See Ludlum v. Department of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002). For example, lack of candor need not involve an affirmative misrepresentation, but "may involve a failure to disclose something that, in the circumstances, should have been disclosed to make the statement accurate and complete." *Id.*; *see*

---

[4] The appellant testified that he did not file a workers' compensation claim regarding his injury. HT at 59 (testimony of the appellant).

*O'Lague*, 123 M.S.P.R. 340, ¶ 16 (finding that, although an agency may base a lack of candor charge on an affirmative misrepresentation, it need not do so). Furthermore, while lack of candor "necessarily involves an element of deception, 'intent to deceive' is not a separate element of the offense—as it is for falsification." *Ludlum*, 278 F.3d at 1284–85. Thus, of relevance here, a lack of candor charge does not require the agency to prove that the appellant intended to defraud, deceive, or mislead the agency for his private material gain. *See Boo*, 122 M.S.P.R. 100, ¶ 14 (distinguishing a lack of candor charge from charges of falsification, misrepresentation, or lying).

¶18    Instead, a lack of candor charge requires proof of the following elements: (1) that the appellant gave incorrect or incomplete information; and (2) that he did so knowingly. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 17 (2016). Here, we find that the agency met this burden of proof. The appellant did not dispute that the information that he provided in the incident report was incorrect and asserted that he provided the incorrect information because he did not want to cause J.L. to be sent back to prison.[5] IAF, Tab 10 at 5, Tab 12 at 6, Tab 17 at 3; HT at 39 (testimony of the appellant); *see* PFR File, Tab 1 at 6. Thus, the appellant effectively admitted that he knowingly provided the agency with incorrect information to prevent the agency from learning the true circumstances of his injury.

¶19    We have considered the appellant's argument on review that he provided inaccurate information on the incident report because he was not thinking clearly

[5] In its opposition to the petition for review, the agency also discusses several instances where the appellant orally made incorrect statements about the cause of his head injury. PFR File, Tab 3 at 7, 9-10. However, the agency did not charge the appellant with orally providing incorrect information about the cause of his injury. IAF, Tab 5 at 39–40. The Board is required to review the agency's decision on an adverse action solely on the grounds invoked by the agency and may not substitute what it considers to be a more adequate or proper basis. *Fargnoli*, 123 M.S.P.R. 330, ¶¶ 7, 15 (citing *Gottlieb v. Veterans Administration*, 39 M.S.P.R. 606, 609 (1989)). Therefore, we have not considered the agency's assertions on review that the appellant made incorrect oral statements about the cause of his injury.

due to his head injury, and find it unpersuasive. PFR File, Tab 1 at 5‑6. The administrative judge considered this same assertion below and properly concluded that it lacked merit. ID at 13. To resolve credibility issues, such as the one presented here, an administrative judge must state which version of each disputed factual issue she believes and explain in detail why she found the chosen version more credible, considering factors including the statement's consistency with other evidence and the inherent improbability of the witness's version of events. *See Hillen v. Department of the Army*, [35 M.S.P.R. 453](#), 458 (1987). Although the administrative judge did not explicitly reference the *Hillen* factors in the initial decision, it is evident from her analysis that she applied the relevant factors and found the appellant's assertion to be inconsistent with other evidence and inherently improbable. ID at 13.

¶20    As the administrative judge correctly noted, although the appellant's injury was serious, he was able to clean himself up and return to work on the day of his injury. ID at 13; HT at 35‑36 (testimony of the appellant). Furthermore, the appellant did not complete the incident report at issue until 2 days after he sustained his injury, IAF, Tab 5 at 69, and continued to commute to work and perform his assigned duties in the interim, ID at 13. Finally, we discern no error in the administrative judge's consideration of the fact that the appellant failed to submit medical documentation to substantiate his claim that he was not thinking clearly as a result of his injury.[6] ID at 13. In sum, the administrative judge made a reasonable credibility determination based on a review of the record as a whole,

---

[6] Moreover, although the appellant testified that he was "not thinking straight" and "not thinking correctly" due to his injury, the relevant inquiry is whether he knowingly provided incorrect information, and he never claimed that his injury affected him to the point that he was unaware that the information he provided to the agency was incorrect. HT at 39‑40 (testimony of the appellant).

and we find no basis to disturb it on review.[7] *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301‑02 (Fed. Cir. 2002) (holding that the Board may overturn an administrative judge's credibility determinations only when it has "sufficiently sound" reasons for doing so); *Little v. Department of Transportation*, 112 M.S.P.R. 224, ¶ 4 (2009) (finding that, where an administrative judge has heard live testimony, her credibility determinations must be deemed to be at least implicitly based upon the demeanor of the witnesses); *see also Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105–06 (1997) (finding no reason to disturb an administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions).

¶21 For these reasons, we modify the initial decision to find that the agency proved the charge of concealment of facts on official documents.

The agency proved a nexus between the sustained misconduct and the efficiency of the service.

¶22 The administrative judge did not make a finding regarding whether the agency proved a nexus between the appellant's sustained misconduct and the efficiency of the service. *See* ID. However, there is sufficient nexus between an employee's conduct and the efficiency of the service where the conduct occurred at work. *Miles v. Department of the Navy*, 102 M.S.P.R. 316, ¶ 11 (2006). Here, the appellant completed the inaccurate incident report at issue while he was at

---

[7] We also have considered and rejected the appellant's argument on review that the administrative judge was obligated to credit his testimony that his injury affected his decision to provide incorrect information in the incident report because she previously found him to be a credible witness regarding his testimony that he did not strike or push J.L. PFR File, Tab 1 at 5. It is well established that an appellant's testimony may be credible regarding some issues but not others. *Gill v. Department of Defense*, 92 M.S.P.R. 23, 27 (2002) (finding that the fact that an individual's testimony is found not credible regarding one issue does not necessarily mean that his testimony is not credible regarding other issues); *Taylor v. Department of the Treasury*, 34 M.S.P.R. 495, 499 (1987) (finding that a witness can be incredible on some issues yet credible on others).

work, and the purpose of the incident report was for the agency to keep a record of safety issues that occurred at work. IAF, Tab 5 at 71; HT at 109-13 (testimony of Safety Officer J.B.). Moreover, the Board has found that an employee's lack of candor directly impacts the efficiency of service. *Ludlum v. Department of Justice*, 87 M.S.P.R. 56, ¶ 28 (2000), *aff'd*, 278 F.3d 1280 (Fed. Cir. 2002). For these reasons, we modify the initial decision to find that the agency proved a nexus between the sustained charge of concealment of facts on official documents and the efficiency of the service.

<u>The appellant failed to prove his affirmative defense of discrimination based on race.</u>

¶23    On review, the appellant contests the administrative judge's findings that he failed to prove his affirmative defense of discrimination based on race.[8] PFR File, Tab 1 at 7‑8. The administrative judge found that the appellant did not prove that the agency discriminated against him based on race under either a disparate treatment theory or with direct evidence. ID at 14‑16. Having considered the appellant's arguments on review, although we modify the initial decision to supplement the administrative judge's analysis, we agree with her ultimate conclusion that the appellant failed to prove this affirmative defense. ID at 14‑16.

¶24    Several months before the initial decision in the instant appeal was issued, the Board issued its decision in *Savage*, which clarified the burdens of proof under which the Board analyzes discrimination and retaliation claims, 122 M.S.P.R. 612, ¶¶ 42–43, 46, 51. Where an appellant asserts an

---

[8] The appellant does not challenge the administrative judge's finding that he failed to prove his affirmative defense of discrimination based on national origin, and we discern no reason to disturb that finding on review. PFR File, Tab 1; ID at 14‑16. As discussed above, in analyzing the appellant's claims of discrimination, the administrative judge did not apply the analytical framework in *Savage*, 122 M.S.P.R. 612, ¶¶ 42–43, 46, 51. However, we find that applying the analytical framework in *Savage* would not change the result in this case.

affirmative defense of discrimination or retaliation, the Board, when reviewing the evidence of discrimination or retaliation, first will inquire whether the appellant has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. *Id.*, ¶ 51. If the appellant meets that burden, the Board then will inquire whether the agency has shown by preponderant evidence that the action was not based on the prohibited personnel practice, i.e., that it still would have taken the contested action in the absence of the discriminatory motive, and, if the Board finds that the agency has made that showing, its violation of 42 U.S.C. § 2000e–16 will not require reversal of the action. *Savage*, 122 M.S.P.R. 612, ¶ 51.

¶25 Here, although the initial decision was issued several months after the Board issued its decision in *Savage*, the administrative judge did not reference or apply *Savage* in the initial decision.[9] ID at 14‒16. Nevertheless, for the reasons discussed below, we find that applying the analytical framework in *Savage* would not change the result in this case.

¶26 The administrative judge found, and we agree, that the appellant did not show by preponderant evidence that race was a motivating factor in the suspension action using direct evidence. ID at 15‒16; *Savage*, 122 M.S.P.R. 612, ¶ 42. Here, although the appellant alleged that various coworkers and contractors, including J.L., made racial comments to him during the course of his employment with the agency, HT at 41‒42 (testimony of the appellant); IAF, Tab 12 at 4‒5, 8‒9, Tab 15 at 5, we agree with the administrative judge that the appellant failed to prove that any agency managers or officials involved in the suspension action at issue made remarks reflecting a discriminatory attitude. ID at 16.

---

[9] However, in an affirmative defenses order issued prior to the initial decision, the administrative judge provided the appellant with notice of the burdens and elements of proving an affirmative defense of discrimination under *Savage*. IAF, Tab 8 at 2‑4. The appellant responded to this order. IAF, Tab 12 at 4.

¶27    We further find that, although the appellant asserted that he reported "years of racial discrimination by co-workers" to agency managers who refused to take action, IAF, Tab 12 at 8, the administrative judge correctly determined that the appellant did not demonstrate that he raised complaints of a hostile work environment to any agency managers or officials prior to the EEO complaint involving the suspension at issue in this appeal.[10] ID at 16.

¶28    In addition, we agree with the administrative judge that the appellant did not prove by preponderant evidence that race was a motivating factor in the suspension action through evidence of disparate treatment of similarly situated comparators. ID at 14-15. For another employee to be deemed similarly situated for purposes of an affirmative defense of discrimination based on disparate treatment, all relevant aspects of the appellant's employment situation must be "nearly identical" to that of the comparator employee. *Ly v. Department of the*

---

[10] On review, the appellant argues that, in an affidavit submitted as part of the agency's investigation into his EEO complaint, his second-level supervisor, J.G., stated that: (1) in August 2013, the appellant reported that his coworkers were racist toward him; and (2) in September 2013, the appellant complained that his first-line supervisor, W.W., treated him differently than other employees. PFR File, Tab 1 at 7 n.1. J.G.'s affidavit reflects that the alleged incident with the appellant's coworkers in August 2013 involved the appellant's dissatisfaction with a work assignment, and the alleged incident with W.W. involved a situation where W.W. criticized the appellant for almost running him over with a forklift. IAF, Tab 5 at 137, 139. Even if these events occurred, the appellant has not demonstrated that they were based on his race, or that they would be sufficiently severe or pervasive to create a working environment that a reasonable person would find hostile or abusive. *See, e.g.*, *Godesky v. Department of Health & Human Services*, 101 M.S.P.R. 280, ¶ 14 n.* (2006) (finding that an appellant's allegations did not establish hostile work environment discrimination because he did not show that the complained-of conduct was sufficiently severe or pervasive enough to create an objectively hostile or abusive work environment); *see also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 754 (1998) (finding that a hostile work environment claim requires a showing of severe or pervasive conduct). Finally, the appellant has not explained how these alleged incidents, which occurred approximately a year before the altercation with J.L. and the incident report at issue, would demonstrate that race was a motivating factor in the suspension action at issue. *See Savage*, 122 M.S.P.R. 612, ¶ 51 (requiring an appellant to make a showing that a prohibited consideration was a motivating factor in the contested personnel action).

*Treasury*, [118 M.S.P.R. 481](#), ¶ 10 (2012).  Thus, to be similarly situated, a comparator must have reported to the same supervisor, been subjected to the same standards governing discipline, and engaged in conduct similar to the appellant's without differentiating or mitigating circumstances.  *Id*.

¶29      On review, as he did below, the appellant argues that he was treated less favorably than J.L., R.P., and M.W., all of whom are African‑American.  PFR File, Tab 1 at 7‑9; IAF, Tab 12 at 8‑9.  Specifically, the appellant argues that the agency never disciplined J.L. for striking him in the head with a hammer, or R.P. and M.W. for filing false statements asserting that the appellant, rather than J.L., initiated the physical altercation at issue.  PFR File, Tab 1 at 7‑9; IAF, Tab 12 at 8‑9; *see* IAF, Tab 5 at 65, 67.  We agree with the administrative judge that the appellant failed to show that he was similarly situated to J.L., R.P., and M.W. because these individuals were contractors, rather than Federal employees, and therefore, the agency could not impose disciplinary action on them.  ID at 14; HT at 10 (testimony of the appellant), 83 (testimony of M.W.), 130 (testimony of the appellant's first‑level supervisor, C.C.).  Moreover, it is undisputed that, after the August 18, 2014 altercation at issue, J.L. walked out of the warehouse and was never seen by the agency again.[11]  IAF, Tab 12 at 6, Tab 13 at 6; HT at 35 (testimony of the appellant).  For these reasons, we agree with the administrative judge that the appellant failed to prove disparate treatment of similarly situated African‑American employees.  ID at 14−15.

¶30      Finally, we find that the appellant failed to present any evidence that the agency's stated reason for imposing the suspension was not worthy of credence, but rather a pretext for discrimination.  *Savage*, [122 M.S.P.R. 612](#), ¶ 42.  For this

---

[11] Moreover, prior to the issuance of the initial decision, the agency would have had no reason to discipline R.P. or M.W. for filing false reports because, although the administrative judge ultimately concluded that their testimony was less credible than the appellant's, the agency was under the impression that their reports were accurate. IAF, Tab 5 at 39‑40.

reason and the reasons discussed above, we modify the initial decision to incorporate the standards in *Savage* and supplement the administrative judge's analysis, still finding that the appellant failed to prove his affirmative defense of discrimination based on race.

The penalty of a 30‑day suspension is reasonable for the appellant's sustained misconduct.

¶31    On review, the appellant contests the administrative judge's finding that the penalty of a 30‑day suspension was reasonable. PFR File, Tab 1 at 6. He argues that there is no basis to conclude that "any penalty would be reasonable for a [F]ederal employee who was violently assaulted with a hammer in the workplace." *Id*. We disagree.

¶32    Where, as here, the Board does not sustain all of the agency's charges, it will carefully consider whether the sustained charges merit the agency's imposed penalty. *See Boo*, 122 M.S.P.R. 100, ¶ 17. In such a case, the Board may mitigate the penalty to the maximum reasonable penalty so long as the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges. *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999). Here, the deciding official testified at the hearing that he would have imposed the same penalty if the appellant had been charged only with falsification or misrepresentation. HT at 218‑19 (testimony of the deciding official). However, the agency did not prove the charge of misrepresentation but rather, proved the separate charge that the appellant concealed facts on official documents. Thus, because the deciding official did not express whether he would have imposed the same or a lesser penalty on the sustained charge, the Board must apply the relevant *Douglas*

factors to determine the maximum reasonable penalty for the appellant's sustained misconduct.[12]  *See Boo*, 122 M.S.P.R. 100, ¶ 17.

¶33    In evaluating whether a penalty is reasonable, the Board will consider, first and foremost, the nature and seriousness of the misconduct.  *Neuman v. U.S. Postal Service*, 108 M.S.P.R. 200, ¶ 23 (2008).  The Board has held that lack of candor is a serious offense that strikes at the very heart of the employer-employee relationship.  *Jackson v. Department of the Army*, 99 M.S.P.R. 604, ¶ 6 (2005) (citing *Ludlum*, 87 M.S.P.R. 56, ¶¶ 28‑29)).  In addition, we find that the deciding official properly considered the intentional nature of the appellant's misconduct as an aggravating factor.  IAF, Tab 16 at 7; HT at 184‑85 (testimony of the deciding official); *see Boo*, 122 M.S.P.R. 100, ¶ 14 (finding that the intentional nature of an employee's misconduct may be an aggravating factor in a lack of candor charge); *Douglas*, 5 M.S.P.R. at 305 (finding that, in evaluating the reasonableness of the penalty, the Board may consider whether the offense was intentional).  We also find that the deciding official properly considered the appellant's prior discipline, consisting of a 14‑day suspension in February 2014 for unprofessional conduct in the workplace, as an aggravating factor.  IAF, Tab 5 at 87‑89, Tab 16 at 7; HT at 186‑87 (testimony of the deciding official); *see Douglas*, 5 M.S.P.R. at 305 (finding that an employee's prior discipline is a factor to consider in determining the penalty for misconduct).

¶34    We have considered the mitigating factors discussed by the deciding official, including the appellant's 4 years of Federal service, his superior performance rating, his potential for rehabilitation, and the job tensions that he experienced with J.L., and find that they do not outweigh the aggravating factors at issue here.  IAF, Tab 16 at 7‑8; HT at 176, 188, 191‑92 (testimony of the

---

[12] In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305–06 (1981), the Board articulated a nonexhaustive list of 12 factors, both aggravating and mitigating, that are relevant to the penalty determination in adverse action cases.

deciding official). Moreover, the appellant's arguments on review that he was violently assaulted with a hammer and that the agency should have been aware that J.L. had the potential for violence do not form a basis for mitigating the penalty. PFR File, Tab 1 at 6. Indeed, if anything, these assertions cast further doubt on the appellant's judgment in concealing J.L.'s actions from the agency.

¶35 Accordingly, based on our review of the relevant *Douglas* factors, and of other cases involving charges of lack of candor, we conclude that a 30‑day suspension is within the bounds of reasonableness for the appellant's sustained misconduct. *See Ludlum*, 87 M.S.P.R. 56, ¶¶ 26‑33 (mitigating a penalty of removal for a lack of candor charge to a 120‑day suspension); *Jones v. Department of Justice*, 13 M.S.P.R. 425, 426‑27 (1982) (sustaining a penalty of removal for an appellant's concealment of facts during a pre‑employment interview).

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims: Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* title 5 of the U.S. Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                     _____
                                   Jennifer Everling
                                   Acting Clerk of the Board

Washington, D.C.